IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY REICHERT,                              *

    *Plaintiff*,                                    *

v.                                             *              Civil Case No: 1:24-cv-01865-JMC

SARAH H. HORNBECK, *et al.*,
                                              *

    *Defendants*.

   *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeffrey Reichert, filed the present lawsuit against Defendants Sarah Hornbeck, John Michel, Jr., and Brennan McCarthy on June 26, 2024. (ECF No. 1).[1] Plaintiff thereafter amended his complaint on October 21, 2024, alleging the following claims: (1) Negligence against Defendant Hornbeck; (2) Fraud against Defendant Hornbeck; (3) Tortious interference with custodial relations against all Defendants; and (4) Malicious prosecution against all Defendants. (ECF No. 17). Presently before the Court are three Motions to Dismiss filed separately by each of the Defendants. (ECF Nos. 28, 34, and 35). The motions are fully briefed, (ECF Nos. 36, 37, 38, and 39), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Defendants' motions to dismiss shall be GRANTED.

## I.    BACKGROUND

The events culminating in this lawsuit began well over a decade ago and are detailed as follows in Plaintiff's Amended Complaint.[2] Plaintiff and Defendant Hornbeck were married on

---

[1] Plaintiff's original complaint additionally named Brennan McCarthy & Associates, Richard Hornbeck, Linda Hornbeck, Helen Laird, Griffin R. Patrick, and the Estate of David Brandeen as defendants. (ECF No. 1). They were not included in Plaintiff's Amended Complaint and have thus been terminated as parties in this matter.

[2] At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

January 31, 2009. (ECF No. 17 at 3).[3] The parties have one child together, whose initials are "G.R." *Id.* Plaintiff initiated divorce proceedings against Defendant Hornbeck in the Circuit Court for Baltimore City in August 2010 "due to the extreme physical and mental abuse he was enduring[.]" *Id.* The Baltimore City Circuit Court entered a judgment of absolute divorce on October 9, 2011. *Id.* G.R. was nine months old by that time, and the "absolute divorce provided for joint legal and physical custody, with tie-breaking authority going to Defendant Hornbeck."

"In or around May 2015," Plaintiff and Defendant Hornbeck agreed that Defendant Hornbeck would relocate from Baltimore City to Anne Arundel County so that G.R. could attend public school in Anne Arundel County. *Id.* at 4. In exchange for Defendant Hornbeck's relocation, Plaintiff promised to pay Defendant Hornbeck additional child support. *Id.* Despite the agreement, Defendant Hornbeck instead "absconded to Maine for the entire summer with G.R." without Plaintiff's consent. *Id.* In September 2015, Plaintiff temporarily consented to Defendant Hornbeck having full physical custody of G.R. for 30 days due to medical issues which rendered him unable to care for G.R. *Id.* During this time, Defendant Hornbeck fully relocated to Maine, enrolled G.R. in school there, and in November 2015 filed a motion in the Circuit Court for Baltimore City "to obtain full custody of G.R." *Id.* However, "upon disclosing she had taken G.R. to Maine in violation of the custody order, Defendant Hornbeck immediately dismissed the proceedings." *Id.* In May 2016, Defendant Hornbeck again took G.R. to Maine for the summer "without either the consent of Plaintiff or the approval by the Circuit Court for Baltimore City." *Id.*

Plaintiff filed to modify the custody order in the Circuit Court for Baltimore City in April 2017. *Id.* Plaintiff contends that several events occurred thereafter that left him concerned for the

---

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

well-being and safety of G.R. while in Defendant Hornbeck's care. *Id.* at 5. First, in March 2018, Defendant Hornbeck was arrested and charged with several offenses in connection with a drug and alcohol incident, and was placed on probation through August 2020. *Id.* Second, in June 2019, "Plaintiff learned from G.R. that Defendant Hornbeck had passed out from drinking" while visiting the Eastern Shore, and that G.R. and his three-year-old brother were "alone for several hours over a period of two days as a consequence of the drinking." *Id.* Plaintiff consequently filed a petition for protection on behalf of G.R. in Anne Arundel County, where he resided by that time. *Id.* The Circuit Court for Baltimore City[4] issued a Final Protective Order [FPO] on August 22, 2019 which "awarded physical and legal custody of G.R. to Plaintiff," and "granted Defendant Hornbeck supervised and conditional visitation rights every other weekend." *Id.*

On October 28, 2019, Plaintiff and Defendant Hornbeck agreed to a Final Consent Order ("FCO") "that modified custody to provide both parents with joint legal custody, with primary physical custody and tie-breaking authority awarded to Plaintiff." *Id.* The FCO "contained several conditions restricting Defendant Hornbeck's access to G.R. because of her past history of child and substance abuse" as well as a mandatory mediation clause. *Id.* One such restriction was that the FPO would remain in effect until its expiration. (ECF No. 17-1 at 6). Baltimore City's Circuit Court granted Plaintiff's motion for an extension of the FPO to August 21, 2020 which Plaintiff filed "after learning that Defendant Hornbeck had failed multiple sobriety tests in connection with her probation, and after hearing from G.R. that Defendant Hornbeck had physically abused him in a recent interaction that involved alcohol[.]" (ECF No. 17 at 6).

---

[4] Plaintiff's Amended Complaint does not explain the transfer of the protective order proceeding from Anne Arundel County to Baltimore City.

Defendant Hornbeck filed a motion to modify custody in the Circuit Court for Anne Arundel County in July 2020, despite Plaintiff having agreed to allow her unsupervised visitation with G.R. (as opposed to the supervised visitation required by the FPO) just twelve days earlier. *Id.* at 6-7. Plaintiff contends that Defendant Hornbeck falsely represented in her motion that she resided in Anne Arundel County at that time, when in fact she lived in either Baltimore City or Baltimore County, "in a malicious effort to circumvent the FCO and the mediation order issued by the Circuit Court for Baltimore City." *Id.* at 6. Defendant Hornbeck's motion further falsely alleged that "Plaintiff had been denying her access to G.R." when in fact "Plaintiff had not violated any of the visitation terms and conditions set forth in the FPO or the consent order." *Id.*

Prior to filing her motion to modify custody, Defendant Hornbeck "called law enforcement at least five times to request wellness checks be performed at Plaintiff's residence" despite having no "legitimate basis to request any of the wellness checks." *Id.* at 7. On July 10, 2020, Defendant Hornbeck filed a missing persons report with respect to G.R. *Id.* Plaintiff contends that at the time of filing the report, Defendant Hornbeck "knew G.R. was spending the night at his best friend's home[.]" The same night, Defendant Hornbeck also filed two applications for protective orders against Plaintiff in the Anne Arundel County Commissioner's Office, one of which contained false claims that Plaintiff put a gun to Defendant Hornbeck's head while she was pregnant. *Id.* At least one of these protective orders was granted, and "directly conflicted with the terms and conditions of the FCO" including by reversing custody, and "did not take into consideration the current protective order against Defendant Hornbeck, the FCO, or that Defendant Hornbeck was on criminal probation at the time." *Id.*

After the protective order against Plaintiff expired, "G.R. informed Plaintiff on multiple occasions that Defendant Hornbeck would physically and verbally abuse him when she was under

the influence of alcohol." *Id.* at 8. Plaintiff subsequently filed for a protective order in Baltimore City, "which was granted and led to Child Protective Services for Baltimore City investigating the matter." *Id.* The investigation was transferred to Anne Arundel County's Child Protective Services Agency, which Plaintiff alleges "did not thoroughly investigate Plaintiff's claims." *Id.* Plaintiff has filed "several" motions to transfer the cases commenced in Anne Arundel County to Baltimore City, or Virginia, where Plaintiff has resided since December 2020, but "[e]ach motion was denied by the Circuit Court for Anne Arundel County." *Id.*

Plaintiff contends that Defendant Hornbeck, with the assistance of Defendants Michel and McCarthy, "made representations to the District Court for Anne Arundel County that led to the commencement of criminal proceedings against Plaintiff." *Id.* For clarity, Defendant Michel is Defendant Hornbeck's fiancé, and Defendant McCarthy is Defendant Hornbeck's attorney in the state court family law proceedings.[5] Defendant Hornbeck's statements "were false or made with reckless disregard for their truth[,]" and included contentions that Plaintiff "was a drug addict, had a criminal history of drug abuse, owned weapons, was physically violent, and that he physically abused G.R." *Id.* According to Plaintiff, these statements were made maliciously and for the purpose of depriving Plaintiff of custody. *Id.*

Plaintiff asserts that "[a]s a result of Defendant Hornbeck's representations, the State of Maryland brought at least twenty-six criminal charges against Plaintiff, and Plaintiff was arrested on at least three separate occasions at his home, in the presence of G.R." *Id.* On August 8, 2020, Plaintiff alleges Defendant Hornbeck filed a petition for a peace order on behalf of David Brandeen,[6] and "she intentionally made false representations in the peace order." *Id.* at 9. The

---

[5] All three defendants are self-represented in the instant matter.
[6] Plaintiff does not explain Mr. Brandeen's relationship to himself or the Defendants in his Amended Complaint.

peace order was issued without an investigation and "without providing Plaintiff an opportunity to be heard on the matter." *Id.* On August 19, 2020, Plaintiff was arrested at his home and remained in jail until August 26, 2020.[7] *Id.* Two days after being released, he was arrested once again and jailed for two additional days. *Id.* On September 4, 2020, "in connection with" the peace order, Plaintiff was again arrested. He states that "police showed up in full SWAT gear, and some even used jet skis to access the marina entrance to Plaintiff's property." *Id.* Plaintiff contends that Defendant Hornbeck's conduct, "aided and abetted by Defendant McCarthy," caused him to spend 19 days in jail. *Id.* The criminal charges against Plaintiff were all eventually either dropped or dismissed. *Id.*

Meanwhile, the custody modification case proceeded in the Circuit Court for Anne Arundel County, which ordered a custody evaluation be performed on October 13, 2020. *Id.* at 10. The court held Plaintiff in contempt multiple times in connection with these proceedings, "despite the fact that Plaintiff was complying with the terms of the FCO, which at times conflicted with orders entered by the Circuit Court." *Id.* On or about July 16, 2021, Plaintiff contends the "Chesapeake JDR"[8] determined there was credible evidence that Defendant Hornbeck abused G.R., and consequently issued a temporary protective order against Defendant Hornbeck and appointed a Guardian *ad Litem* to investigate further. *Id.* The Chesapeake JDR extended the protective order "in a manner that expressly prevented G.R. from leaving the Commonwealth of Virginia for almost the entire summer of 2021[,]" which prohibited Plaintiff from transporting G.R. to Maryland. *Id.*

In November 2022, Plaintiff filed for a protective order on behalf of G.R. against Defendant Michel in the Chesapeake JDR, in response to G.R. informing Plaintiff that he was "afraid of

---

[7] It is unclear whether this arrest was related to the peace order.
[8] Plaintiff does not specify what the "Chesapeake JDR" is, but the Court believes it to be the Juvenile and Domestic Relations District Court in Chesapeake, Virginia.

Defendant Michel" and G.R.'s therapist reporting to Plaintiff that "G.R. did not feel safe with Defendant Michel." *Id.* At the final protective order hearing, Plaintiff asserts that Defendant Michel falsely represented that Defendant Hornbeck did not reside with him, which stripped the Chesapeake JDR of jurisdiction over the matter. *Id.* at 11.

The Circuit Court for Anne Arundel County awarded Defendant Hornbeck sole physical and legal custody of G.R. on September 19, 2022, stating that "the Court is unable to make a finding at this time that [Plaintiff] can have unsupervised visitation with [G.R.] without the likelihood of further damage to [G.R.'s] psychological and emotional well-being." *Id.* Plaintiff maintains that Defendant Hornbeck has not permitted Plaintiff to visit G.R. since that time. *Id.* Defendant Hornbeck filed for a protective order in the District Court for Baltimore County on October 9, 2024. *Id.* The temporary protective order "prohibited Plaintiff from contacting or attempting to contact G.R., which conflicted with the terms and conditions of the current custody order." *Id.* Plaintiff asserts there was "no factual basis to seek the temporary protective order" as he had not seen G.R. for more than thirty-three months by that time, and had not spoken with him in more than a year. *Id.* At the time the Amended Complaint was filed, Defendant Hornbeck continued to refuse Plaintiff any contact with G.R. (whether supervised, unsupervised, or by phone). *Id.* at 12.

Plaintiff alleges that Defendant's actions have irreparably harmed his relationship with G.R., likely "leading to long-term psychological and emotional consequences for both the child and Plaintiff." *Id.* Plaintiff additionally contends Defendants have caused him to incur substantial financial losses for expenses related to "defending against baseless criminal charges, protective orders, and the improper modification of custody proceedings." *Id.* Finally, Plaintiff notes that his professional reputation has been damaged by Defendants' false allegations—Plaintiff is an

attorney, and maintains that Defendants' conduct has caused him public embarrassment and damaged his standing in the legal community, "impacting Plaintiff's career as an attorney and his ability to maintain client relationships." *Id.*

Plaintiff filed the instant action on June 26, 2024. (ECF No. 1). He subsequently amended his complaint on October 21, 2024, narrowing his claims to the following counts: (1) Negligence against Defendant Hornbeck; (2) Fraud against Defendant Hornbeck; (3) Tortious interference with custodial relations against all Defendants; and (4) Malicious prosecution against all Defendants. (ECF No. 17). All three Defendants filed motions to dismiss Plaintiff's Amended Complaint, which are presently pending before this Court. (ECF Nos. 28, 34, 35).

## II.    <u>LEGAL STANDARDS</u>

### a.    <u>Motions to Dismiss under Federal Rule 12(b)(1)</u>

Defendants assert that Plaintiff's claims are precluded by the *Rooker-Feldman* doctrine, which bars actions in federal district court "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil v. Saudi Bask Indus. Corp.*, 544 U.S. 280, 281 (2005). Because a parties' motion brought pursuant to the *Rooker-Feldman* doctrine challenges a court's ability to hear a case, it is properly considered under Rule 12(b)(1). *Ihenachor v. Maryland*, No. RDB-17-3134, 2018 WL 1863678, at *2 (D. Md. Apr. 18, 2018) (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 715 (4th Cir. 2006)).

"Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." *Id.* (citing *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005)). A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject

matter jurisdiction may be brought in one of two ways: "First, it may be contended that a complaint simply fails to allege facts upon which subject matter can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "Second, it may be contended that the jurisdictional allegations of the complaint were not true." *Id.* In other words, a Rule 12(b)(1) motion may proceed as a facial challenge or a factual challenge. *Effland v. Balt. Police Dep't*, No. MJM-23-1494, 2024 WL 4349690, at *3 (D. Md. Sept. 30, 2024) (quoting *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 2d 452, 479 (D. Md. 2019)).

"In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (citations omitted). In a factual challenge, the court may weigh evidence outside the pleadings to "determine whether it has jurisdiction over the case before it." *Agbara v. Prince George's Cnty. Pub. Schs.*, No. TJS-20-0306, 2020 WL 7425298, at *4 (D. Md. Dec. 18, 2020) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 673571, at *8 (explaining that when weighing a factual challenge under 12(b)(1), the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (citation omitted)). A 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond*, 945 F.2d at 768).

b.  <u>Motions to Dismiss under Federal Rule 12(b)(6)</u>

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

III.    **ANALYSIS**

a.  The *Rooker-Feldman* doctrine bars Plaintiff's negligence, tortious interference with custodial relations, and malicious prosecution claims to the extent that they depend on the validity of state court judgments, and fully precludes his claim for fraud.

"It is well established that before a federal court can decide the merits of a claim, the claim must involve the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Whitmore v. Arkansas*, 495 U.S. 49, 155 (1990); *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) ("This Court has consistently treated the *Rooker-Feldman* doctrine as jurisdictional, and '[b]ecause the *Rooker-Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis." (internal citations omitted)). The

Court will therefore begin by addressing Defendants' arguments that all four of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is derived from 28 U.S.C. § 1257, which vests the United States Supreme Court with jurisdiction to hear appeals from state court decisions in cases which raise questions of federal law. 28 U.S.C. § 1257. Because such jurisdiction was *not* conferred on the lower federal courts, the doctrine essentially precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine bars even those suits which do not explicitly claim to seek appellate review. "A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Smalley*, 526 F. App'x at 235 (quoting *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 216 (internal citation omitted)). Thus, claims which are "inextricably intertwined" with state court decisions are implicated by the doctrine, even if not directly adjudicated by the state court. *Id.* at 236 (citing *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (internal citation omitted)). As explained by the Fourth Circuit:

> The controlling question in the *Rooker–Feldman* analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual," *Rooker–Feldman* is implicated.

*Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (citing *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)).

That said, the United States Supreme Court has cautioned that the *Rooker-Feldman* doctrine occupies a "narrow ground[,]" noting that the cases for which the doctrine is named "exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, § 1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon*, 544 U.S. at 281. As previously stated, *see supra* Sec. II(a), the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

Defendant McCarthy contends that Plaintiff's claims must be dismissed under the *Rooker-Feldman* doctrine because the Amended Complaint "specifically takes issue with in-court statements, motive mongers the parties and witnesses, [and] sets forth statements made in pleadings and the resulting orders and judgments entered against [Plaintiff] in state court." (ECF No. 28-1 at 15). He argues that the factual bases for Plaintiff's claims are rooted in the family law case and state court proceedings, and that the present lawsuit "attempts to have this Court second guess the considered judgments of the state court in a custody matter, as well as separate protective and peace order matters." (ECF No. 37 at 13). Defendants Reichert and Michel raise substantially similar arguments, and in fact incorporate and adopt by reference Defendant McCarthy's Motion to Dismiss in their own motions. (ECF No. 34 at 2; 35 at 3). Plaintiff responds that he "brings independent tort claims arising from Defendants' orchestrated campaign of false statements, malicious prosecution, and tortious interference with his parental rights for a prolonged period" which qualifies as "conduct that falls squarely within this Court's diversity jurisdiction and is not

barred by the *Rooker-Feldman* doctrine." (ECF No. 36 at 1). The undersigned will apply the doctrine to each of Plaintiff's claims individually.

i. Count I: Negligence (Defendant Hornbeck)

Plaintiff contends that "Defendant Hornbeck had a duty to act with reasonable care in her actions with Plaintiff and her handling of matters involving" G.R., which includes "compliance with court orders and proper legal procedures." (ECF No. 17 at 13). He alleges a number of specific actions Defendant Hornbeck has taken in breach of that duty:

    a) Filing a motion for modification of custody in the Circuit Court for Anne Arundel County, despite knowing that the appropriate venue for such proceedings was the Circuit Court for Baltimore City, where the matter had been pending for nearly ten years;

    b) Falsely asserting that she resided in Anne Arundel County at the time of filing the motion, with the intent of misleading the court and circumventing the existing Final Protective Order and custody orders issued by the Circuit Court for Baltimore City;

    c) Repeatedly requesting wellness checks and filing protective orders against Plaintiff without a legitimate basis, knowing these actions would cause distress and unwarranted legal complications for Plaintiff;

    d) Filing a false missing persons report regarding G.R. despite being aware of G.R's whereabouts, solely to manipulate the legal process and gain an advantage in the custody dispute; and

    e) Utilizing the protective orders to initiate multiple unwarranted criminal proceedings against Plaintiff, resulting in his wrongful arrests in the presence of his minor child, G.R.

*Id.*

Although Plaintiff argues in his opposition that his injuries arise from independent tortious acts which would be actionable regardless of the state court judgments, (ECF No. 26 at 14), it is apparent from the conduct alleged in Paragraphs A through D that Plaintiff's alleged injuries flow from the state court rulings.[9] The bulk of Plaintiff's negligence claim ultimately rests on Defendant

---

[9] Plaintiff contends that "the reputational damage and emotional distress caused by Defendants' coordinated campaign of false allegations constitute separate injuries unrelated to the custody rulings themselves." (ECF No. 36

Hornbeck's alleged conduct culminating in a state court judgment, which is the true source of his injury. Put another way, Plaintiff alleges Defendant Hornbeck took certain actions (such as making a false statement regarding her residency), but the purported injury to Plaintiff was effectuated only by the state's eventual custody orders. In essence, Plaintiff would not be injured by Defendant Hornbeck's false statement regarding her residency but for its impact on the custody proceedings. The same is true for Plaintiff's contentions with respect to the state court protective orders.

The Fourth Circuit's reasoning in *Smalley v. Shapiro & Burson, LLP* is instructive, despite being factually distinct from the present case. The *Smalley* plaintiffs sued a law firm which foreclosed on their homes on behalf of the plaintiffs' mortgage lenders, arguing that the law firm's lack of diligence in confirming facts submitted in affidavits to the court leading to the foreclosures was "unfair and unconscionable[,]" "the signatures on the affidavits were the result of 'rampant forgery[,]'" and the law firm imposed excessive and unearned fees. 526 F. App'x at 234-35. The plaintiffs asserted claims for fraud, violations of the Maryland Consumer Protection Act, and violations of the federal RICO statute, Fair Debt Collection Practices Act, Fair Housing Act, and Civil Rights Act. *Id.* at 235. Although the plaintiffs did not seek reversal of the state court foreclosure orders in their federal action, the Fourth Circuit held that the claims were nonetheless barred by the *Rooker-Feldman* doctrine because "permitting their case to go forward would, in essence, hold that the state court judgments which affirmed the legal fees and commissions and held the allegedly false affidavits sufficient to warrant foreclosure was in error." *Id.* at 236. The plaintiffs' federal claims were "inextricably intertwined" with the state court foreclosure actions, and because "the alleged source of [their] harm [was] shielded by state court judgments that

_____

at 14). The Court is not persuaded that damage to plaintiff's reputation and emotional distress are separate from the state court judgments—these effects appear to be inextricably bound up with the custody order.

necessarily rested on a [state court] decision" which the plaintiffs challenged, they were limited to relief "afforded in the state court system." *Id.*

Like the *Smalley* plaintiffs, Plaintiff does not seek reversal of the state court custody or protective orders in his federal suit. However, because his injury was effectuated by the state court judgments, permitting his claim to proceed as alleged would require this Court to weigh whether those judgments were erroneous with respect to, for example, proper venue, the factual bases for Defendant Hornbeck's protective orders, and the appropriateness of the wellness checks and missing person's report she purportedly filed—all of which are also relevant to the ultimate issue of custody. *Compare id.* at 237 ("[The plaintiff's] primary complaints are: the imposition of attorneys' fees; the award of a commission; and the allegedly fraudulent, but not false, affidavits. By affirming the foreclosures, the Maryland state court necessarily passed judgment on the amount of the attorneys' fees and commissions and the content of the affidavits."). Plaintiff's success necessarily depends on a "determination that the state court wrongly decided the issues before it," and his negligence claim is therefore barred by the *Rooker-Feldman* doctrine to the extent that it seeks redress for injuries caused by the state court judgments. *Plyler v. Moore*, 129 F.3d 728, 731-32 (4th Cir. 1997) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)); *see also Davani*, 434 F.3d at 719 ("[I]f the state-court loser seeks redress for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision and is therefore outside the jurisdiction of the federal district court.").

However, Plaintiff sets forth a narrow claim which is not precluded by the *Rooker-Feldman* doctrine. In Paragraph E of Count I, Plaintiff contends that Defendant Hornbeck utilized the protective orders to initiate criminal proceedings against him. (ECF No. 17 at 13). This allegation reflects an injury—the criminal prosecutions—which occurred *after* the entry of the final

protective orders (given that they were "utilize[ed]…to initiate" the criminal proceedings), and seemingly completed *before* the custody decision was rendered in 2022. *Gilbank v. Wood Cnty. Dep't of Human Servs.*, 111 F.4th 754, 767 (7th Cir. 2024) ("Where…an injury was complete before the state-court judgment was rendered, the judgment could not have caused the injury, so a claim based on that injury is independent."). Plaintiff provides little detail regarding the criminal charges, but notes that he was arrested three times in August and September of 2020, at least one of these arrests was in connection with the peace order obtained by David Brandeen, and that all twenty-six charges brought against him were either dropped or dismissed. (ECF No. 17 at 8-9). It remains possible that this case theory presents an injury which is not caused by a final state court judgment. Given the limited factual record before the Court at the motion to dismiss stage, the undersigned declines to hold that this limited aspect of Plaintiff's negligence claim is barred by the *Rooker-Feldman* doctrine. In any case, as will be explained, the remainder of Plaintiff's negligence claim will be dismissed on a different basis.

### ii.  Count II: Fraud (Defendant Hornbeck)

Plaintiff next contends that "Defendant Hornbeck knowingly made false representations to various courts and law enforcement agencies regarding her residence, her actions, and Plaintiff's conduct, with the intent to deceive and manipulate the legal process to her advantage." (ECF No. 17 at 14). He specifically alleges that Defendant Hornbeck's fraudulent actions include:

a) Falsely claiming in her motion for modification of custody that she resided in Anne Arundel County, Maryland, when she actually resided in Baltimore City or Baltimore County, Maryland, with the intent to mislead the Circuit Court for Anne Arundel County into taking jurisdiction over the matter;

b) Filing a false missing person's report for G.R. despite knowing that G.R. was staying at his best friend's house with her prior knowledge and consent—which created a misleading appearance of Plaintiff's neglect and wrongdoing;

c) Falsely accusing Plaintiff of putting a gun to her head while she was pregnant in the protective order application submitted to the Anne Arundel County Commissioner's Office, all while knowing the statement was false and made

16

> for the purpose of securing a protective order and initiating criminal proceedings against Plaintiff;[10] and
>
> d) Misrepresenting to the court during custody proceedings that she had ceased drinking alcohol for two years, despite G.R.'s direct testimony to the contrary that he witnessed Defendant Hornbeck consuming alcohol and becoming intoxicated while he was in her care.

*Id.*

Plaintiff's factual contentions once again demonstrate that one of his federal court claims, this time for fraud, is inextricably intertwined with the state court proceedings. All four ostensibly false representations were made in the course of either the state court custody proceeding or in pursuit of protective orders.[11] As explained above with respect to Plaintiff's negligence claim, the actual source of his purported injuries for the fraudulent conduct alleged is the state court judgments[12] and he essentially seeks review and rejection of those judgments with respect to jurisdiction, the factual bases for protective orders, and even the credibility of witness testimony.[13] *Davani*, 434 F.3d at 719 ("A claim seeking redress for an injury caused by the state court decision itself—even if the basis of the claim was not asserted to the state court—asks the federal district court to conduct an appellate review of the state-court decision."). Permitting Plaintiff's fraud claim to proceed would eventually require a determination that the custody and protective order

---

[10] Plaintiff's statement that Defendant Hornbeck acted "for the purpose of…initiating criminal proceedings against Plaintiff" may appear similar to Plaintiff's claim that Defendant Hornbeck utilized the protective orders to initiate criminal charges against Plaintiff in Count I. It is distinguishable, however, because the sole factual contention (Hornbeck's purported false statement in the protective order application) in Count II occurred prior to, and in pursuit of, the state court protective order.

[11] Although Paragraph B relates to allegedly filing a false missing persons report and was not explicitly a statement made in the course of the custody or protective order proceedings, the fact that Plaintiff contends the false report "created a misleading appearance of Plaintiff's neglect and wrongdoing" unmistakably links the consequences of the report to the state custody judgment.

[12] By way of example: Defendant Hornbeck's alleged misrepresentations in the custody proceedings regarding her drinking are not independently harmful to Plaintiff—the testimony informed the state court's custody order which is the true source of Plaintiff's purported injury.

[13] Paragraph D suggests that this Court weigh the credibility of conflicting testimony given by Defendant Hornbeck and G.R. in the custody proceeding.

state court judgments were "erroneously entered" and the claim is accordingly barred under the *Rooker-Feldman* doctrine. *Jordahl*, 122 F.3d at 202.

### iii. Count III: Tortious Interference with Custodial Relations (All Defendants)

Plaintiff asserts that all three Defendants "were aware of Plaintiff's custodial rights and the court-ordered custody arrangements that awarded Plaintiff joint legal custody and primary physical custody of G.R.[,]" and that they "intentionally engaged in wrongful and malicious conduct aimed at interfering with Plaintiff's relationship with G.R," including:

a) Defendant Hornbeck, with the assistance of David Brandeen, filed a motion for modification of custody in the Circuit Court for Anne Arundel County, falsely claiming that Defendant Hornbeck resided in that jurisdiction, despite knowing the proper venue was the Circuit Court for Baltimore City;

b) Defendants conspired to file false protective orders and other legal actions against Plaintiff, falsely accusing him of violent and threatening behavior, with the intent to undermine his custodial rights and damage his relationship with G.R.;

c) Defendant Hornbeck, with the knowledge and support of Defendants McCarthy and Michel, initiated multiple unwarranted criminal proceedings against Plaintiff, leading to his wrongful arrest on several occasions in the presence of G.R., thereby causing distress and disruption to Plaintiff's custodial relationship; and

d) Defendant Michel actively participated in and supported Defendant Hornbeck's efforts to remove G.R. from Plaintiff's custody by making false statements and encouraging the misuse of legal processes against Plaintiff.

(ECF No. 17 at 15-16). As with Plaintiff's negligence and fraud claims, the injuries flowing from Paragraphs A, B, and D are actually effectuated by the state court custody and protective orders. Because he seeks redress for injuries caused by a state-court decision, the majority of Plaintiff's tortious interference claim is inextricably intertwined with the state court decision and is outside this Court's jurisdiction. *Davani*, 434 F.3d at 718-19. However, Plaintiff's contentions in Paragraph C regarding his criminal arrests allege injuries which are not caused by a state court judgment—the arrests themselves, as well as the effect of the arrests on G.R.—and are therefore

not barred by the *Rooker-Feldman* doctrine. Further, to the extent that Plaintiff's claim rests on conduct which occurred *after* the entry of the custody order[14] and is not directed by the order,[15] any injury suffered by Plaintiff is not traceable to the state court judgment and is also not barred under *Rooker-Feldman*. *See Exxon Mobil*, 544 U.S. at 281 (explaining the *Rooker-Feldman* doctrine precludes federal actions "brought by state-court losers complaining of *injuries caused by state-court judgments* rendered before the district court proceedings commenced." (emphasis added)). That said, as will be explained in later sections of this opinion, Plaintiff's remaining tortious interference claim will be dismissed on alternative grounds.

iv.   <u>Count IV: Malicious Prosecution (All Defendants)</u>

Plaintiff finally alleges that all three Defendants "intentionally initiated or caused the initiation of criminal proceedings against Plaintiff by making false statements to law enforcement and judicial authorities." (ECF No. 17 at 16). According to Plaintiff, as a result of these representations the State of Maryland brought at least twenty-six criminal charges against him, he was arrested three times, and incarcerated for a total of nineteen days. *Id.* at 8-9. All charges were either dropped or dismissed. *Id.* at 17.

Unlike Plaintiff's other claims, the injuries Plaintiff alleges here—criminal prosecution, incarceration, and arrest—are separate and distinct from any final state court judgment. Although the events may be related to the state court protective orders,[16] to the extent that Plaintiff alleges

---

[14] The Court infers the possibility of conduct occurring after the entry of the custody order based on Plaintiff's contentions that Defendants have refused him any visitation with G.R. since the entry of the September 2022 custody order, and have denied him phone access to G.R. since October 2023. (ECF No. 17 at 12). These allegations are incorporated by reference into Plaintiff's tortious interference claim. *Id.* at 15.

[15] For example: if Plaintiff alleged injury as a result of limited access to G.R., even if the deprivation occurred after the entry of the order, it will be barred by the *Rooker-Feldman* doctrine if the deprivation is directed by the order. If Plaintiff was denied visitation rights which he was entitled to under the order, such injury would not be barred by the doctrine.

[16] As previously noted, it isn't clear what the twenty-six criminal charges brought against Plaintiff were. Defendant McCarthy attached six MDEC criminal dockets for Plaintiff to his Reply, which all reflect charges brought for

conduct which followed the issuance of the protective orders and led to criminal charges, his claim will not be barred by the *Rooker-Feldman* doctrine.

Plaintiff does, however, allege facts in Count IV which implicate the doctrine. Specifically, Plaintiff contends that "Defendant Hornbeck falsely alleged that Plaintiff put a gun to her head while she was pregnant, a statement that was entirely fabricated and made for purpose[s] of obtaining a protective order and instigating criminal charges against him." *Id.* at 16. As previously explained, *see supra* Sec. III(a)(ii), this Court lacks jurisdiction to consider the sufficiency of the factual bases for state-issued protective orders under these circumstances. In sum, the protective orders themselves may not be invoked as a source of injury by Plaintiff, but Plaintiff's malicious prosecution claim will not be precluded by *Rooker-Feldman* provided that his claim is based on the criminal proceedings and conduct subsequent to the entry of the protective orders.

      **b.** <u>Plaintiff's remaining claims for negligence, tortious interference with custodial relations, and malicious prosecution will be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted.</u>

To briefly summarize the opinion so far, Plaintiff's claims for negligence, tortious interference with custodial relations, and malicious prosecution are not barred by the *Rooker-Feldman* doctrine to the limited extent that they are based solely on injuries which were not caused by state court judgments. This effectively limits Plaintiff to claims based on (1) the state court criminal proceedings; and (2) conduct occurring after the entry of the 2022 custody order which is not directed by the order. Because the Court does not lack subject-matter jurisdiction over this narrow portion of Plaintiff's claims, the undersigned will next turn to Defendants' arguments that

---

harassment and violations of a protective order. (ECF Nos. 37-1; 37-2; 37-3; 37-4; 37-5; and 37-6). These account for only twelve criminal charges though. *Id.*

they must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

    i.  <u>Count I: Negligence (Defendant Hornbeck) and Count III: Malicious Prosecution (All Defendants)</u>

Plaintiff's remaining negligence[17] and malicious prosecution claims are both solely predicated upon facts related to the criminal proceedings against Plaintiff. The Court will therefore address them together as they suffer from the same deficiencies. As the undersigned has noted several times throughout this opinion, Plaintiff provides little information regarding the criminal proceedings. Plaintiff alleges that Defendant Hornbeck made several false statements, including that "Plaintiff was a drug addict, had a criminal history of child abuse, owned weapons, was physically violent, and that he physically abused G.R." (ECF No. 17 at 8). He further maintains that as a result of Defendant Hornbeck's false statements, the State of Maryland brought twenty-six criminal charges against him, at least one of the proceedings was related to the peace order obtained by David Brandeen, he was arrested three times, and was jailed for nineteen days. *Id.* at 8-9. He indicates that the arrests occurred in August and September 2020, and that all charges were either dropped or dismissed. *Id.*

Plaintiff does not explain what the twenty-six criminal charges were or the circumstances that led to their commencement. He also fails to specify the roles of Defendants Michel and McCarthy in the charges beyond generally alleging that Defendant Michel "supported and

---

[17] Defendant McCarthy additionally argues that Plaintiff's theory of negligence fails as a matter of law because he fails to set forth a recognized duty in tort. (ECF No. 37 at 18).  Plaintiff contends that Defendant Hornbeck "had a duty to act with reasonable care in her interactions with Plaintiff and her handling of matters involving their minor child, G.R., including compliance with court orders and proper legal procedures." (ECF No. 17 at 13). While it is possible that Plaintiff's theory is not suited to a negligence claim, the undersigned is reluctant to dismiss the claim on this basis without giving Plaintiff an opportunity to brief the issue.

encouraged the filing of false reports" and Defendant McCarthy "aided and abetted" Defendant Hornbeck's wrongful conduct. *Id.* at 9, 17. And, as Defendant McCarthy identifies, because Plaintiff does not state when the charges were dropped, it is not possible to determine whether Plaintiff's claims are barred by the applicable statute of limitations. Defendant McCarthy provided the criminal dockets for six cases brought against Plaintiff since July 2020, but these account for only twelve charges against Plaintiff. The facts alleged do not provide adequate notice to Defendants of the factual grounds relating to the criminal proceedings, as it is uncertain which criminal proceedings are the subject of the Plaintiff's claims or when they occurred. Under these circumstances, the Court finds that Plaintiff's allegations are overly threadbare and will dismiss the remaining negligence and malicious counts on those grounds.

> ii. <u>Count II: Tortious Interference with Custodial Relations (All Defendants)</u>

Defendants next argue that Plaintiff fails to state a claim for tortious interference with custodial relations because he has no custodial relationship with G.R. at this time, and does not allege any abduction of G.R. (ECF No. 28-1 at 18).[18] Plaintiff counters that Defendants have deliberately interfered with his "custodial rights through improper means[,]" and notes that the Court of Appeals of Maryland has recognized a tortious interference claim even where the parent had some custodial rights. (ECF No. 36 at 22) (citing *Khalifa v. Shannon*, 404 Md. 107, 118 (2008)). While Plaintiff is correct that the *Khalifa* court held the plaintiff sufficiently alleged the elements of tortious interference even where he merely had visitation rights, *Khalifa*, 404 Md. at 127, he does not address his failure to allege a physical abduction of G.R.

---

[18] Defendants further contend that Plaintiff's tortious interference claim is barred by the doctrines of collateral estoppel and *res judicata*. (ECF No. 28-1 at 20). Because the Court will dismiss the remainder of this claim under Rule 12(b)(6), it makes no finding with respect to these doctrines.

Under Maryland law[19] a claim for tortious interference with custodial rights requires conduct that is (1) intentional; (2) outrageous; and (3) involves the physical removal and harboring of the child from the parent. *Haines v. Vogel*, 250 Md. App. 209, 226 (2021). Regarding the third element, "the tort is based on cases of abduction" and Maryland case law makes clear "that physical removal must be alleged and proven to sustain a charge of interference with a parental relationship as defined in the Restatement[.]" *Id.* Plaintiff does not allege physical abduction of G.R. and accordingly fails to state a claim for tortious interference with custodial relations. The Court will therefore dismiss the remaining portion of Count IV.

## IV.     CONCLUSION[20]

For the reasons stated herein, Defendants' Motions to Dismiss (ECF Nos. 28, 34, and 35) shall be GRANTED and all claims set forth in Plaintiff's Amended Complaint (ECF No. 17) are hereby dismissed. Dismissal shall be without prejudice[21] and with leave to amend. Plaintiff shall file a Second Amended Complaint within twenty-eight (28) days from the date of this Memorandum Opinion and Order, at which time Defendants shall file an answer or other responsive pleading (including another motion to dismiss if appropriate) within twenty-one (21) days therefrom.

---

[19] Maryland's choice of law rules govern in this diversity action. *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022) ("Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit."). Regarding tort claims under Maryland's choice of law rules, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Thus, the Court will apply the substantive tort law of Maryland because the material events giving rise to Plaintiff's Amended Complaint occurred in Maryland.

[20] Because Plaintiff's claims are dismissed in full under the *Rooker-Feldman* doctrine and Federal Rule 12(b)(6), the Court declines to address Defendants' arguments that Plaintiff's claims are barred by the applicable statute of limitations, the litigation privilege, and the collateral estoppel and *res judicata* doctrines.

[21] A dismissal under the *Rooker-Feldman* doctrine is "ultimately due to a lack of subject matter jurisdiction" and is therefore without prejudice "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Rodman v. Jean-Charles*, No. DKC-18-3757, 2020 WL 7588298, at *3 n.2 (D. Md. Dec. 22, 2020) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 714 F.3d 175, 185 (4th Cir. 2013)).

Date: <u>February 13, 2025</u>

_____/s/_____
J. Mark Coulson
United States Magistrate Judge