IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY REICHERT,                          *

    *Plaintiff*,                            *

v.                                         *         Civil Case No: 1:24-cv-01865-JMC

SARAH H. HORNBECK,                         *

    *Defendant.*                            *

    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jeffrey Reichert, initiated the present lawsuit on June 26, 2024. (ECF No. 1). Plaintiff subsequently filed an Amended Complaint on October 21, 2024. (ECF No. 17). On February 13, 2025, this Court granted three Motions to Dismiss filed separately by Defendants Brennan McCarthy, John Michel Jr., and Sarah Hornbeck, but permitted Plaintiff leave to amend his Complaint. *Reichert v. Hornbeck*, No. 1:24-cv-01865-JMC, 2025 WL 487337, at *20 (D. Md. Feb. 13, 2025). Plaintiff filed a Second Amended Complaint on May 1, 2025, (ECF No. 52), which Ms. Hornbeck, the sole Defendant named in Plaintiff's Second Amended Complaint, now moves to dismiss. (ECF No. 57). Ms. Hornbeck's Motion to Dismiss has been fully briefed, (ECF No. 58; ECF No. 59), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Ms. Hornbeck's Motion to Dismiss shall be DENIED.

## I.    BACKGROUND

### a.    Factual Background

The parties in this matter have a lengthy and complex history of litigation largely stemming from state court custody proceedings involving their minor son, G.R. Plaintiff and Ms. Hornbeck were married on January 31, 2009, and divorced on October 9, 2011, when G.R. was nine months

old. (ECF No. 52 at 2-3).[1] Rather than providing a full account of the facts plead in Plaintiff's Second Amended Complaint, the Court will focus solely upon those relevant to Ms. Hornbeck's pending Motion to Dismiss.[2]

Ms. Hornbeck filed a motion to modify custody of G.R. in the Circuit Court for Anne Arundel County, Maryland on July 9, 2020. *Id.* at 5. The following day, she filed a missing person's report regarding G.R. with the Anne Arundel County Police Department. *Id.* at 6. Plaintiff maintains the missing person's report was falsely filed, and that "[a]t the time of filing the report, Defendant Hornbeck knew that G.R. was spending the night at his best friend's home for a sleepover[,]" a fact G.R. had communicated to Ms. Hornbeck earlier that day by text message. *Id.* On July 11, 2020, Ms. Hornbeck filed a petition for protective order against Plaintiff in the District Court for Anne Arundel County. *Id.* Plaintiff alleges Ms. Hornbeck "made false statements in the protective order application specifically for the purpose of securing a protective order, initiating criminal proceedings against Plaintiff, and obtaining full custody of G.R.[,]" including a claim that Plaintiff put a gun to her head while she was pregnant. *Id.* The Anne Arundel County Commissioner issued an interim protective order to Ms. Hornbeck on July 11, 2020, and issued a temporary protective order on July 13, 2020. *Id.*; ECF No. 52-4 at 3.[3] The parties appeared for a protective order hearing on July 28, 2020, at which a final protective order was granted, prohibiting

---

[1] When weighing a motion to dismiss, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the Plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

[2] A more comprehensive factual background is provided in the undersigned's February 13, 2025 memorandum opinion granting dismissal of Plaintiff's First Amended Complaint. *See Reichert*, 2025 WL 487337 at *1-4.

[3] Plaintiff attaches two applications of statements of charges filed by Ms. Hornbeck as well as the criminal statements of charges which followed his Second Amended Complaint. As will be discussed, these documents may be properly considered in deciding Ms. Hornbeck's Motion to Dismiss. *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (citing *Gaines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)) ("As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits[.]")

Plaintiff from contacting Ms. Hornbeck for one year except to facilitate visitation of G.R. (ECF No. 57-5 at 72).

Prior to the final protective order hearing, Ms. Hornbeck filed two applications for statements of charges on July 14, 2020, and July 25, 2020, alleging Plaintiff violated the July 11th interim protective order and the July 13th temporary protective order, respectively. (ECF No. 52 at 7-8). Following the hearing she filed three additional applications on August 8, 2020, August 18, 2020, and August 21, 2020, reporting further violations of the protective order by Plaintiff. *Id.* at 8-10. Five different criminal proceedings were commenced against Plaintiff for his purported violations of the protective orders, and Plaintiff was arrested multiple times, one time in the presence of G.R. and separately "at his residence while hosting a cookout" for friends and family. *Id.* Plaintiff states "police showed up in full SWAT gear" to arrest him, and "even used jet skis to access the marina entrance to Plaintiff's property." *Id.* at 10. Plaintiff spent at least five days in jail following his arrests. *Id.* at 8-10. Each of the five criminal proceedings ultimately resolved in Plaintiff's favor on or after August 5, 2021. *Id.*

### b.  Procedural History

Plaintiff, then proceeding *pro se*, filed his original Complaint on June 26, 2024. (ECF No. 1). The first Complaint alleged an extensive conspiracy by Ms. Hornbeck, her parents, her attorney, her fiancé and a court-appointed custody evaluator to deprive Plaintiff of custody of G.R.  *Id.* Plaintiff asserted six counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and named nine Defendants: Ms. Hornbeck, John Michel Jr., Brennan McCarthy, Brennan McCarthy & Associates, Richard Hornbeck, Linda Hornbeck, Helen Laird, Griffin R. Patrick, and the Estate of David Brandeen. *Id.* at 1-2. The Clerk of the Court issued a New Case Notification Letter to Plaintiff on June 27, 2024, which was returned as undeliverable due to

Plaintiff inadvertently providing two different addresses on his court filings. (ECF No. 4; ECF No. 5). On July 26, 2024, the undersigned set a deadline for Plaintiff to either pay the mandatory filing fee or file a motion to proceed *in forma pauperis*, and Plaintiff submitted the filing fee by the deadline. (ECF No. 6). This Court next set a deadline for Plaintiff to file completed summonses so that service could be effectuated on each Defendant. (ECF No. 8). Three days after the summonses deadline, counsel for Plaintiff entered his appearance and simultaneously filed a motion for an extension of time to comply with the Court's order and serve process. (ECF No. 15). Plaintiff's counsel explained that he intended to file an Amended Complaint which would consolidate the claims set forth in the original Complaint and requested a thirty (30)-day extension to file the Amended Complaint and submit summonses, as well as an additional sixty (60) days to serve process on the Defendants named in the Amended Complaint. *Id.* The Court granted Plaintiff's motion the same day. (ECF No. 16).

Plaintiff filed his Amended Complaint on October 21, 2024. (ECF No. 17). The Amended Complaint named only Ms. Hornbeck, Mr. Michel, and Mr. McCarthy as Defendants, and narrowed Plaintiff's claims to four counts: (1) negligence against Ms. Hornbeck; (2) fraud against Ms. Hornbeck; (3) tortious interference with custodial relations against all Defendants; and (4) malicious prosecution against all Defendants. *Id.* All three Defendants filed motions to dismiss Plaintiff's Amended Complaint, which this Court granted in a February 13, 2025 memorandum opinion and order. *See generally Reichert*, 2025 WL 487337. Specifically, the Court held that the *Rooker-Feldman* doctrine barred Plaintiff's negligence, tortious interference with custodial relations, and malicious prosecution claims to the extent that they depended on the validity of state court judgments, and fully precluded his claim for fraud. *Id.* at *5-6. The undersigned further determined that the remainder of Plaintiff's negligence, tortious interference with custodial

4

relations, and malicious prosecution claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Id.* at *11-12. Dismissal was ordered without prejudice and with leave to amend, and the Court permitted Plaintiff twenty-eight days to file a Second Amended Complaint. *Id.*

Plaintiff filed his Second Amended Complaint on May 1, 2025, which solely asserts a malicious prosecution claim against Ms. Hornbeck. (ECF No. 52).[4] Ms. Hornbeck subsequently filed a Motion to Dismiss Plaintiff's Second Amended Complaint, which is presently pending before this Court. (ECF No. 57).

## II.    LEGAL STANDARDS

### a.    Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

Ms. Hornbeck asserts that Plaintiff's claim is precluded by the *Rooker-Feldman* doctrine, which bars actions in federal district court "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil v. Saudi Bask Indus. Corp.*, 544 U.S. 280, 281 (2005). Because a parties' motion brought pursuant to the *Rooker-Feldman* doctrine challenges a court's ability to hear a case, it is properly considered under Rule 12(b)(1). *Ihenachor v. Maryland*, No. RDB-17-3134, 2018 WL 1863678, at *2 (D. Md. Apr. 18, 2018) (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 715 (4th Cir. 2006)).

"Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." *Id.* (citing *Davis v. Thompson*, 367 F. Supp.

---

[4] Plaintiff sought an extension to file his Second Amended Complaint so that he could obtain copies of the records in the criminal proceedings, which the Court granted. (ECF No. 41; ECF No. 49). The Second Amended Complaint was further delayed after Plaintiff's counsel mis-calendared the filing deadline, but the undersigned determined it should nonetheless be accepted. (ECF No. 55).

2d 792, 799 (D. Md. 2005)). A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may be brought in one of two ways: "First, it may be contended that a complaint simply fails to allege facts upon which subject matter can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "Second, it may be contended that the jurisdictional allegations of the complaint were not true." *Id.* In other words, a Rule 12(b)(1) motion may proceed as a facial challenge or a factual challenge. *Effland v. Balt. Police Dep't*, No. MJM-23-1494, 2024 WL 4349690, at *3 (D. Md. Sept. 30, 2024) (quoting *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 2d 452, 479 (D. Md. 2019)).

"In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (citations omitted). In a factual challenge, the court may weigh evidence outside the pleadings to "determine whether it has jurisdiction over the case before it." *Agbara v. Prince George's Cnty. Pub. Schs.*, No. TJS-20-0306, 2020 WL 7425298, at *4 (D. Md. Dec. 18, 2020) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 673571, at *8 (explaining that when weighing a factual challenge under 12(b)(1), the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.") (citation omitted)). A 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Richmond*, 945 F.2d at 768).

      b.  <u>Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Reamer*, 556 F. Supp. 3d at 549 (citation omitted). However, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Id.* (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). Additionally, "[c]ourts may take judicial notice

of publicly available records without converting a motion to dismiss to a motion for summary judgment[.]" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 503 (D. Md. 2019 (citing *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015)); *see also Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *overruled on other grounds, as recognized in Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint.").

Here, Plaintiff attaches four documents to his Second Amended Complaint: two of the applications for statements of charges filed by Ms. Hornbeck, and two statements of charges. (ECF Nos. 52-1; 52-2; 52-3; 52-4). Ms. Hornbeck additionally attaches a number of exhibits to her Motion to Dismiss, including: a transcript of the July 28, 2020 protective order hearing; exhibits submitted at the hearing; the temporary protective order and return of service of the temporary protective order; the final protective order; and documents related to Plaintiff's appeal of the protective order, including the notice of appeal and the Maryland Court of Special Appeals' opinion and order affirming the circuit court's decision. (ECF Nos. 57-2; 57-3; 57-4; 57-5; 57-6; 57-7; 57-8; 57-9; 57-10; 57-11; 57-12). Neither party has raised concerns regarding the authenticity of the exhibits submitted by the other, and they are all within the public record and arguably also integral to Plaintiff's Second Amended Complaint. The Court will therefore exercise its discretion to consider the materials submitted by both parties without converting Ms. Hornbeck's Motion to Dismiss into a motion for summary judgment. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 626 (D. Md. 2020) (citation omitted) (explaining courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is

offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").[5]

### III.    ANALYSIS

#### a.    The *Rooker-Feldman* does not bar Plaintiff's malicious prosecution claim.

Ms. Hornbeck first argues that Plaintiff's Second Amended Complaint must be dismissed pursuant to the *Rooker-Feldman* doctrine. (ECF No. 57-1 at 19). As this Court discussed in its February 13, 2025 memorandum opinion, 28 U.S.C. § 1257 confers jurisdiction on the United States Supreme Court to hear appeals from state court decisions which raise questions of federal law. 28 U.S.C. § 1257. Under the *Rooker-Feldman* doctrine, which is derived from 28 U.S.C. § 1257, because such jurisdiction was not vested in the lower federal courts they are essentially precluded "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine bars suits explicitly seeking appellate review of state court judgments, as well as claims which are "inextricably intertwined" with state court decisions. *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) (quoting *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) ("A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'"). Thus, as the Fourth Circuit as explained:

> The controlling question in the *Rooker–Feldman* analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court

---

[5] Additionally, summary judgment would be premature at this stage in the litigation, as discovery has not yet commenced. *Pevia*, 443 F. Supp. 3d at 626 ("Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery."); *see also Sol v. M&T Bank*, No. 8:22-CV-02999-AAQ, 2024 WL 327086, at *4 (D. Md. Jan. 29, 2024) (collecting cases).

> judgment was erroneously entered or must take action that would render the
> judgment ineffectual," *Rooker–Feldman* is implicated.

*Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (citing *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). The United States Supreme Court has cautioned that the *Rooker-Feldman* doctrine occupies a "narrow ground[,]" noting that the cases for which the doctrine is named "exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, § 1257, precludes a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon*, 544 U.S. at 281.[6] The doctrine is accordingly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*

    Ms. Hornbeck contends that because Plaintiff cites purportedly false statements in Ms. Hornbeck's petition for a protective order as a basis for his malicious prosecution claim, he improperly seeks review and rejection of the state court protective order, thus warranting dismissal of his entire claim. (ECF No. 57-1 at 19). Plaintiff responds that this is a mischaracterization of his complaint, and argues that the "*Rooker-Feldman* doctrine does not bar claims where the federal plaintiff challenges the defendant's conduct rather than the state court's ruling." (ECF No. 58 at 3) (citing *Davani*, 434 F.3d at 719). Plaintiff points out that he "alleges that [Ms. Hornbeck's] false statements, not the state court's protective order, caused his injuries—wrongful arrests and

---

[6] In the two decades since the United States Supreme Court issued *Exxon Mobil Corp.*, the Fourth Circuit did not publish any opinions holding that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine until this past June. *See T.M. v. Univ. of Md. Med. Sys. Corp.*, 139 F.4th, 344, 346 (4th Cir. 2025).

prosecutions[,]" and avers he has therefore asserted an independent tort claim. (ECF No. 58 at 3). Both parties miss the mark.

While Plaintiff accurately identifies that *Rooker-Feldman* is inapplicable when the alleged injury is distinct from a state court judgment, he continues to allege facts which necessarily require review of the state court protective order. For example, after contending the applications for statements of charges filed by Ms. Hornbeck falsely allege that he violated the protective order, he goes on to state that Ms. Hornbeck also "filed several petitions for protective orders that contained false allegations that Plaintiff had, among other things, threatened her with a firearm, physically abused G.R., had a criminal history of child abuse, and was a drug addict." (ECF No. 52 at 12). The Court refers the parties to its February 13, 2025 memorandum opinion, which addressed the question of whether Plaintiff's malicious prosecution claim was barred by the *Rooker-Feldman* doctrine:

> Unlike Plaintiff's other claims, the injuries Plaintiff alleges [with respect to his malicious prosecution claim]—criminal prosecution, incarceration, and arrest—are separate and distinct from any final state court judgment. Although the events may be related to the state court protective orders, **to the extent that Plaintiff alleges conduct which followed the issuance of the protective orders and led to criminal charges, his claim will not be barred by the *Rooker-Feldman* doctrine.**
>
> Plaintiff does, however, allege facts in Count IV which implicate the doctrine. Specifically, Plaintiff contends that "Defendant Hornbeck falsely alleged that Plaintiff put a gun to her head while she was pregnant, a statement that was entirely fabricated and made for purpose[s] of obtaining a protective order and instigating criminal charges against him." As previously explained, this Court lacks jurisdiction to consider the sufficiency of the factual bases for state-issued protective orders under these circumstances. In sum, the protective orders themselves may not be invoked as a source of injury by Plaintiff, but Plaintiff's malicious prosecution claim will not be precluded by *Rooker-Feldman* **provided that his claim is based on the criminal proceedings and conduct subsequent to the entry of the protective orders.**

11

*Reichert*, 2025 WL 487337 at *11 (emphasis added) (citations and footnote omitted). The Court's prior holding remains applicable here. Dismissal of Plaintiff's entire malicious prosecution claim is not warranted under the *Rooker-Feldman* doctrine because his claim is predicated, at least in part, on the criminal proceedings and conduct subsequent to the entry of the protective order (specifically, Ms. Hornbeck's statements in the applications for criminal charges). Ms. Hornbeck is correct, however, that Plaintiff continues to reference statements from her protective order petition which may *not* serve as the basis for his malicious prosecution claim under the *Rooker-Feldman* doctrine.[7] Consequently, the Court will not consider these allegations in determining the sufficiency of Plaintiff's complaint under Rule 12(b)(6). That said, the Court concludes that it does not lack subject matter jurisdiction over the entirety of Plaintiff's malicious prosecution claim under the *Rooker-Feldman* doctrine and declines to dismiss Plaintiff's Second Amended Complaint on these grounds.

In sum, Plaintiff's malicious prosecution claim may proceed to the extent that it is based on the criminal proceedings and conduct occurring *subsequent* to the entry of the protective orders.[8] For example, evidence demonstrating that Plaintiff did or not contact Ms. Hornbeck following the entry of the July 11, 2020 protective order is certainly relevant and may be considered, as it would go to the question of whether Ms. Hornbeck had a legitimate basis to seek criminal charges be instituted against Plaintiff. Ms. Hornbeck's statements made in the petition for the protective order (including reference, for example, to her allegation that Plaintiff put a gun to

---

[7] The Court makes no finding at this time regarding the admissibility of such evidence should this case proceed to trial.

[8] It is possible that evidence of events occurring prior to the entry of the protective orders may be relevant to establishing malice and/or that Ms. Hornbeck acted with a motive other than to bring Plaintiff to justice. The Court makes no finding on this issue at this time.

her head) may not serve as the basis for the claim, as that requires the Court to weigh whether the protective orders were erroneously entered by the state court.

   b. <u>The Second Amended Complaint relates back to the original complaint and is therefore not barred by Maryland's three-year statute of limitations.</u>

  Ms. Hornbeck next contends that Plaintiff's claim should be dismissed as untimely because it was filed beyond the applicable limitations period. (ECF No. 57-1 at 19-24). Under Maryland law, a malicious prosecution claim accrues from the date that the criminal proceeding terminates in a plaintiff's favor. *Heron v. Strader*, 761 Md. A.2d 56, 59 (Md. 2000). This is the case because "the tort of malicious prosecution includes not only the initiation of criminal proceedings against the plaintiff, but also the termination of those proceedings in the defendant's favor as a necessary element of the cause of action." *Id.* A plaintiff therefore lacks facts to support all the elements for a malicious prosecution claim until the criminal case terminates. *Id.* In the instant matter, it is undisputed that the relevant criminal proceedings terminated in Plaintiff's favor on or after August 5, 2021. (ECF No. 57-1 at 23). Thus, Plaintiff's malicious prosecution claim was required to be filed by August 5, 2024 in order to be timely filed pursuant to Maryland's general three (3)-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

  Plaintiff's original Complaint was filed on June 24, 2024, within the limitations period. (ECF No. 1). His First and Second Amended Complaints were filed on October 21, 2024, and May 1, 2025, respectively. (ECF No. 17; ECF No. 52). Plaintiff's Second Amended Complaint is therefore time barred unless it  "relates back" to the original Complaint. Under Federal Rule of Civil Procedure 15(c)(1)(B), an amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P.

15(c)(1)(B).[9] Relation back requires "a factual nexus between the amendment and the original complaint." *Mbanusi v. Liberty Mut. Ins. Co.*, No. DLB-23-777, 2025 WL 1311686, at *2 (D. Md. May 6, 2025) (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)). Put differently, "the amended claims and the original claims [must] share a core of operative facts." *Id.* (quoting Steven S. Gensler, *Federal Rules of Civil Procedure: Rules & Commentary Rule 15* (2022)). Provided that is the case, a plaintiff may plead a different legal theory or change the causes of action alleged. *See AIG Prop. Cas. Co. v. Eaton Corp.*, No. 18-cv-1853-JKB, 2019 WL 1586253, at *5 (D. Md. Apr. 12, 2019) (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 (3d ed. 2018)) ("A plaintiff may revise its legal theory, change the statutory basis of its claim, or even add counts, but only if 'the factual situation upon which the action depends remains the same.'"). Where there is a factual nexus between the amended claim and the original pleading, "the amended claim will be 'liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment.'" *Dollar v. Anne Arundel Cnty.*, No. 24-1642-BAH, 2024 WL 4436122, at *4 (D. Md. Oct. 7, 2024) (quoting *Grattan*, 710 F.2d at 163 (citation omitted)).

Ms. Hornbeck argues that Plaintiff's malicious prosecution claim is barred by the statute of limitations because the claim relates back to the First Amended Complaint, which included a claim for malicious prosecution, but not to the original Complaint. (ECF No. 57-1 at 19-20). Ms.

---

[9] The Court will apply Rule 15(c) of the Federal Rules of Civil Procedure in this diversity case, which "governs the relation back of amendments and controls in the face of conflicting and less generous state law." *Fed. Leasing, Inc. v. Amerperif Corp.*, 840 F. Supp. 1068, 1071 (D. Md. 1993) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611-12 (4th Cir.)). Courts in this district have applied state relation back law in cases where a pleading was amended prior to removal, *Lloyd v. Gen. Motors Corp.*, 560 F. Supp. 2d 420, 424 (D. Md. 2008), and where a statutory limitations provision was an essential element of the cause of action. *Knauer v. Johns-Manville Corp.*, 638 F. Supp. 1369, 1374 (D. Md. 1986). Neither situation is applicable here. *See Davis*, 615 F.2d at 611-12 (explaining the United States Supreme Court's decision *Hanna v. Plumber* "generally commands application of [Federal Rule 15(c)] in the face of a contrary state rule[.]").

14

Hornbeck maintains the "original Complaint is meandering item, and fails to set forth in any sort of factual detail any of the claims that would be put forth" in the First Amended Complaint. *Id.* She further submits that the original Complaint, styled as a RICO matter, focused on a scheme to deprive Plaintiff of custody of G.R. and "shares no similarities with at all with the amended complaints filed in this case." *Id.* at 20. Additionally, Ms. Hornbeck notes the original Complaint was not served on any of the named Defendants within ninety (90) days as required under Federal Rule 4(m), she did not receive notice of Plaintiff's claims within the limitations period, and is prejudiced by defending a stale claim. *Id.* at 20-21. Plaintiff counters that the original Complaint alleged a scheme involving false charges, and the Second Amended Complaint elaborates on these allegations, constituting an amplification of the same core facts and allowing for relation back. (ECF No. 58 at 4) (citing *Robinson v. Pytlewski*, No. 19-cv-1025, 2022 WL 2359259, at *8 (D. Md. June 30, 2022)). Plaintiff further argues that Ms. Hornbeck had constructive notice of the action within the limitations period "given the ongoing case activity" despite the fact that service of the original Complaint was delayed. *Id.*

Based on an independent review of the original Complaint and the Second Amended Complaint, the Court concludes that they share a common core of operative facts such that relation back under Federal Rule 15(c)(1)(B) is permissible. Although Plaintiff's original Complaint does not expressly allege malicious prosecution, it sets forth facts practically identical to those underpinning his Second Amended Complaint:

> Defendant Sarah Hornbeck, aided by co-conspirators John Michel, Jr., David Brandeen, Brennan McCarthy, and others within the enterprise, filed twenty-six (26) criminal charges against Plaintiff Jeffrey Reichert, all of which were dropped or dismissed at trial, including Defendant Sarah Hornbeck's four (4) petitions for contempt filed against Plaintiff Jeffrey Reichert, but not before Plaintiff Jeffrey Reichert had been arrested four times "with force" at his home in front of his son G.R. To note, none of these filings had anything to do with the Minor Child, G.R.,

and instead were intended to disparage Plaintiff Jeffrey Reichert's reputation, and create even more distance between the Plaintiff and his son, G.R.

…

The scheme continued when Defendant Sarah Hornbeck, with the assistance of Defendants David Brandeen and Brennan McCarthy, filed maliciously false criminal charges for violating said false PO, resulting in the violent arrest of Plaintiff Jeffrey Reichert on three (3) separate occasions at his residence and in front of his son, G.R. in August 2020. All charges were later dismissed by the Anne Arundel District Court (26 of them).

(ECF No. 1 at 3, 9).[10] Plaintiff alleges precisely the same conduct in his Second Amended Complaint as the grounds for his malicious prosecution claim: he details the dates on which Ms. Hornbeck submitted the applications for statements of charges for Plaintiff's protective order violations, explains when the criminal proceedings terminated, and describes the instances in which he was arrested. (ECF No. 52 at 7-10). This close factual nexus between the two claims allows Plaintiff's Second Amended Complaint to relate back to the June 24, 2024 original Complaint, bringing it within Maryland's three (3)-year limitations period. *Bradley v. Veterinary Orthopedic Sports Med. Grp.*, No. DKC-10-2662, 2022 WL 703916, at *8 (D. Md. Mar. 9, 2022) (finding a close factual nexus between the new claims and those in the original complaint, where claims were "grounded entirely in the same events" and involved "the same individuals and same interactions."); *Robinson*, 2022 WL 2359359 at *10 ("Plaintiffs' amended complaint relates back

---

[10] Given that the same facts are alleged in Plaintiff's original Complaint and the Second Amended Complaint, it is also probable that Plaintiff's Second Amended Complaint relates back under Federal Rule 15(c)(1)(A), which provides that an amendment relates back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The Maryland Rules of Civil Procedure do not contain an express provision governing the relation back of amendments, but "Maryland courts do, nonetheless recognize and apply such a precept, though it is narrower in scope than its federal counterpart." *Youmans v. Douron, Inc.*, 65 A.3d 185, 195-95 (Md. Ct. Spec. App. 2013) (internal citation omitted). Under Maryland law, "an amendment relates back to a prior pleading, 'so long as the operative factual situation,' stated in the amended pleading, 'remains essentially the same,' as alleged in the prior pleading." *Id.* at 195 (quoting *Crowe v. Houseworth*, 325 A.2d 592 (Md. 1974)). In the instant matter, the set of facts relating to Plaintiff's malicious prosecution claim are so clearly alike that both the federal and state standards appear to be satisfied.

to the original complaint because the allegations in the amended complaint concern the same core facts and ultimate wrong alleged in the original complaint[.]").

There is additionally no basis to conclude that Ms. Hornbeck will be prejudiced by the relation back of Plaintiff's Second Amended Complaint. The only prejudice Ms. Hornbeck articulates is that she will be forced to defend a stale claim, but she does not identify any specific harm. (ECF No. 59 at 4). Were this adequate to establish prejudice, it is difficult to envision any matter in which relation back would be permissible, as the doctrine is invoked precisely for the purpose of allowing a claim which would otherwise be time barred to proceed. The facts alleged in Plaintiff's original Complaint provided Ms. Hornbeck with sufficient notice of potential liability in relation to her pursuit of criminal charges against Plaintiff for violations of the state protective orders. Where a party is on notice of the claims against them, "[a]n amendment will not be disallowed merely because it asserts a new theory of recovery." *Farb v. Fed. Kemper Life Assurance Co.*, 213 F.R.D. 264, 268 (D. Md. 2003). Accordingly, Ms. Hornbeck has not demonstrated prejudice. *See Dollar*, 2024 WL 4436122 at *5 (finding failure to show prejudice where the amended complaint merely clarified existing allegations, and defendant thus had sufficient notice of potential liability from original pleading).

The undersigned is also not persuaded that dismissal is necessary because Ms. Hornbeck was not served with the original Complaint within the limitations period and/or within ninety (90) days of filing under Federal Rule 4(m). The parties do not cite, and the Court did not identify, case law precisely mirroring the facts of this case, i.e., where an original Complaint is not served within the limitations or original service period, but an Amended Complaint is served by the deadline of a court-ordered extension for service. Within the context of relation back under Federal Rule 15(c), case law regarding notice within the limitations period often relates to subsection C of Federal

17

Rule 15(c)(1), which governs when "the amendment changes the party or the naming of the party against whom the claim is asserted[.]" Fed. R. Civ. P. 15(c)(1)(C); *see, e.g.*, *Robinson v. Clipse*, 602 F.3d 605 (4th Cir. 2010); *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2010); *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007). Under Rule 15(c)(1)(C), an amendment must first satisfy the Rule 15(c)(1)(B) standard of arising from the same conduct, transaction, or occurrence set out in the original pleading, and then requires that two additional standards be met: within the period provided for by Federal Rule 4(m), the newly named party must have "received such notice of the action that it will not be prejudiced in defending on the merits" and the new party must know, or should know, "that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.* Here, however, relation back is proper under Rule 15(c)(1)(B) because Ms. Hornbeck was not added as a new party in the Amended Complaint. Fed. R. Civ. P. 15(c)(1)(B). In any event, Rule 15(c)(1)(C) explicitly provides that notice is required within the time for service set forth in Rule 4(m), not the limitations period, and subsequent case law clarifies that "Rule 15(c)'s notice period incorporates any extension by a court of that 90-day deadline." *Williams*, 45 F.4th at 775 (quoting *Robinson*, 602 F.3d at 608).[11] Given that Defendants were served with Plaintiff's Amended Complaint within the extension for service granted on September 20, 2024, (ECF No. 16), the Court finds that relation back is permissible. The Second Amended Complaint therefore relates back to the original Complaint and will be deemed timely filed.

      c.  <u>Plaintiff adequately states a claim for malicious prosecution.</u>

---

[11] A 1991 Amendment to Rule 15(c) was enacted to change the result required by *Schiavone v. Fortune*, which Ms. Hornbeck cites in her memorandum for the proposition that notice must be received with the statute of limitations period. Fed. R. Civ. P. 15, advisory comm. notes (1991 Amendment). In *Schiavone*, the Supreme Court held that notice to a new party must be received within the limitations period. 477 U.S. 21, 29 (1986). In response, the 1991 Amendment explained that the notice required would no longer be linked to the limitations period, but instead to the federal service period under Rule 4(m). Fed. R. Civ. P. 15, advisory comm. notes (1991 Amendment).

Finally, Ms. Hornbeck contends that Plaintiff's Second Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 57-1 at 28).[12] To sufficiently plead a claim for malicious prosecution under Maryland law, a plaintiff must allege four elements: "(1) a criminal proceeding instituted or continued by defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Heron*, 761 A.2d at 59 (citations omitted). It is not disputed that Ms. Hornbeck instituted a criminal proceeding against Plaintiff and the proceedings terminated in Plaintiff's favor. The Court's analysis will therefore be limited to the second and third elements of Plaintiff's claim.

Ms. Hornbeck advances three arguments in support of dismissal: (1) Plaintiff mixes criminal and civil process in his factual allegations, and civil process cannot serve as the basis for a malicious prosecution claim; (2) Ms. Hornbeck had probable cause to report Plaintiff's violations of the protective orders; and (3) Plaintiff fails to set forth facts that could demonstrate Ms. Hornbeck acted with a motive other than to bring Plaintiff to justice. (ECF No. 57-1 at 24-28). The undersigned is not persuaded by Ms. Hornbeck's first argument. She is correct that Plaintiff includes allegations related to civil protective order and custody proceedings in his Second Amended Complaint. However, the criminal proceedings are the crux of his claim and are sufficiently plead. (ECF No. 52 at 6-10). Merely referencing related civil proceedings does not warrant dismissal of Plaintiff's malicious prosecution claim, where, as here, Plaintiff also alleges that Ms. Hornbeck instituted five separate criminal cases against him. *Id.* Ms. Hornbeck's third

---

[12] Ms. Hornbeck additionally submits that Plaintiff fails to state a claim for intentional infliction of emotional distress (IIED). (ECF No. 57-1 at 28). Because Plaintiff does not assert a claim for IIED in his Second Amended Complaint, and agrees that he does not plead IIED (ECF No. 58 at 7), the Court will not address these arguments.

argument must be rejected as well, as Plaintiff plainly alleges that Ms. Hornbeck acted with a motive other than to bring him to justice, "in an effort to undermine Plaintiff's custodial rights and cause irreparable damage to his personal and professional life." *Id.* at 1.[13]

Finally, Plaintiff has adequately plead that Ms. Hornbeck submitted the applications for criminal charges without probable cause. Probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Smithfield Packing Co., v. Evely*, 905 A.2d 845, 860 (Md. Ct. Spec. App. 2006) (quoting *Gladding Chevrolet, Inc. v. Fowler*, 287 A.2d 280, 284 (Md. 1972)) (citation omitted). "Mere belief, however sincere, is not sufficient. There must be grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person." *Id.* The parties focus much of their briefing regarding this issue on whether Plaintiff was served with the interim protective order on July 12, 2020, presumably because Plaintiff alleges that Ms. Hornbeck "knew the allegations against Plaintiff were false and completely lacked any legitimate basis" because, in part, "court records definitively establish that Plaintiff had not been served with either of the protective orders issued on or about July 11, 2020 or July 13, 2020 despite Defendant Hornbeck swearing under oath in multiple Applications for Statement[s] of Charges that Plaintiff had been served[.]" *Id.* at 12. Ms. Hornbeck directs the Court's attention to a return of service in which an Anne Arundel County officer attests they personally served a copy of the interim protective order on Plaintiff on July 12, 2020 at 6:50pm. (ECF No. 57-2). Plaintiff nonetheless

---

[13] "Malice" in a malicious prosecution action may also be "proven by inference from a lack of probable cause from prosecuting the plaintiff." *Montgomery Ward v. Wilson*, 664 A.2d 916, 932 (Md. 1995).

maintains he was not served with the protective order on July 12th, arguing the return of service does not conclusively prove he was served. (ECF No. 58 at 5).[14]

The Court declines to make a finding on this issue at this early stage in the case. Regardless of whether Plaintiff was served on July 12th, his malicious prosecution claim will be permitted to proceed at this juncture because he additionally contends that he did not contact or threaten Ms. Hornbeck in violation of the protective orders as she states in her applications for statements of charges. (ECF No. 52 at 12). Such allegations, if proven true, could certainly establish a lack of probable cause, as there could be no reasonable belief that Plaintiff violated the protective orders under such circumstances. For instance, Plaintiff notes that Ms. Hornbeck accused Plaintiff in the July 14, 2020 application for statement of charges of emailing her over twenty-three (23) times between July 12 and July 14, 2020, when "[a]t most, Defendant Hornbeck was copied on two emails exchanged between Brennan McCarthy and Plaintiff during this time." *Id.* at 7. While Ms. Hornbeck argues that contacting her via her attorney even twice constitutes a violation of the protective order and is sufficient probable cause, she does not address Plaintiff's contentions that the applications for statements of charges submitted *after* July 14, 2020 (on July 25th, August 8th, August 18th, and August 21st) also contained false statements. *See, e.g., id.* at 8 ("In the second Application for Statement of Charges, Defendant Hornbeck claimed Plaintiff violated the terms of the July 13th protective order by sending her nine text messages on July 22, 2020…Plaintiff did not send nine text messages to Defendant Hornbeck on July 22, 2020[.]").[15] Further, the Court

---

[14]  Plaintiff sent two emails to Ms. Hornbeck's counsel at 5:41pm and 6:12pm (shortly before the Anne Arundel County officer attests Plaintiff was served) in which he states he was not served with the protective order. (ECF No. 57-6 at 23-24). Ms. Hornbeck additionally notes that the parties appeared by telephone on July 13, 2020 when the District Court issued its temporary protective order. (ECF No. 57-1 at 33 n.9).

[15] The Court notes that Plaintiff repeatedly states in the Second Amended Complaint that he was not served with the July 13, 2020 temporary protective order at the time Ms. Hornbeck submitted applications for statements of charges on July 25, 2020, August 8, 2020, August 18, 2020 and August 21, 2020. (ECF No. 52 at 6-10). However, Plaintiff

reviewed the communications submitted as exhibits in the July 28, 2020 protective order hearing and did not identify any dated after July 13, 2020 which were directed to Ms. Hornbeck—meaning that they could not possibly serve as definitive proof that Ms. Hornbeck had probable cause to pursue criminal charges for violations occurring after that date.[16] There remain significant factual disputes concerning Plaintiff's contact with Ms. Hornbeck following the protective orders. *See Smithfield Packing Co.*, 905 A.2d at 860 (quoting *Gladding Chevrolet*, 287 A.2d at 284) ("What facts are sufficient to show want of probable cause in any case is, of course, a question law for the court; but whether such facts are proved by the evidence is a question for the jury."). Accordingly, construing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently alleged that Ms. Hornbeck lacked probable cause,[17] and his malicious prosecution claim may proceed.

## IV.    CONCLUSION

For the aforementioned reasons, it is this 23rd day of July, 2025, by the United States District Court for the District of Maryland hereby ORDERED:

1) Ms. Hornbeck's Motion to Dismiss (ECF No. 57) is DENIED; and

---

appeared before the Anne Arundel County District Court for a protective order hearing on July 28, 2020 and, per the hearing transcript, was provided with a copy of the final protective order on that date. (ECF No. 57-5 at 80-81).

[16] Many of the text messages were undated. Additionally, three emails were sent after July 13, 2020 – on July 14th, July 22nd, and July 27th. (ECF No. 57-8 at 21, 23, and 24). However, these emails were sent directly to Ms. Hornbeck's attorney, and she was not copied on them.

[17] To be clear, this opinion does not conclude that Ms. Hornbeck lacked probable cause to cause criminal proceedings to be instituted against Plaintiff. The Court simply cannot make a determination regarding probable cause on the factual record currently before it. The undersigned would need to be presented with the applications submitted for each of the five criminal cases, as well as conclusive evidence of Plaintiff's contact, or lack of contact, with Ms. Hornbeck alleged in the applications, should such evidence exist.

2) Ms. Hornbeck shall file an answer to Plaintiff's Second Amended Complaint within fourteen (14) days of this Order.

Dated: July 23, 2025

_____/s/_____
J. Mark Coulson
United States Magistrate Judge