**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JEFFREY W. REICHERT,** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Case No: 1:24-cv-01865-JMC** |
| **SARAH HORNBECK,** | * | |
| *Defendant.* | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Jeffrey Reichert ("Plaintiff") initiated the above-captioned malicious prosecution case against Defendant Sarah Hornbeck ("Defendant") on June 26, 2024.  (ECF No. 1).  Presently before the Court is Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 75). The Motion is fully briefed (ECF Nos. 75, 91, 93) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth immediately below, the Motion (ECF No. 75) is GRANTED.

**I.      BACKGROUND**

The instant litigation is one of many claims arising from the parties' contentious, ten-year state court divorce and child custody litigation.  In the case *sub judice*, Plaintiff brought a malicious prosecution action against Defendant, a civilian.  A summary of the undisputed facts relevant to the Court's consideration of the instant motion follows.

On July 10, 2020, Defendant filed for a Protective Order in the District Court of Maryland for Anne Arundel County in the matter of *Hornbeck v. Reichert*, Case No.: D-07-FM-20-004669. (ECF No. 75-2). On July 11, 2020, the District Court entered an Interim Amended Protective Order (the "Interim PO").  (ECF No. 75-3).  Under the Interim PO, Plaintiff was directed not to "contact, attempt to contact, or harass (in person, by telephone, in writing, or by any other means) Sarah

Hornbeck." *Id.* at 2.[1]  There are no exceptions to the no-contact rule on the Interim PO.  *See id.*

Nonetheless, Plaintiff sent a two and a half page email to Defendant's attorney, with Defendant

cc'd on July 12, 2020 at 5:41 p.m. (ECF No. 75-10 at 11-13).  In that email, Plaintiff stated (among

other things),

> And I was told to send this email by the police and to include Sarah on the email
> since it's in the system that I have not been served. I could technically call her up
> right now or go say hello. I know there is a supposed PO, but I do not have a copy
> and the police need it today to arrest her. You can wait until tomorrow before the
> hearing…but that will delay the hearing and time is certainly not on your side…

*Id.* at 12. On July 12, 2020, Officer Wood of the Anne Arundel County Police Department served

the Interim PO on Plaintiff at 6:50 p.m. (ECF No. 75-4).  In the next email Plaintiff sent to

Defendant on July 13, 2020 at 11:16 a.m., Plaintiff stated,

> Sarah – you are VERY sick and are in A LOT of trouble.  I can't protect you from
> your illness anymore. [GR] certainly can't. He doesn't want to talk to you or your
> parents for a while. We are going to get him a new phone and new number. Again,
> if you want to go to the mediator like YOU agreed to, I can. But you did things to
> him that I won't ever think a kid can recover from. It may have seemed fun, but
> you have NO IDEA what you did to him. It's horrible.
>
> We have a hearing in 2 hours and you send me this? NO ONE EVER ASKED ME
> THAT BEFORE YOU COMMITTED MULTIPLE FELONIES and will result in
> Civil lawsuits once the damages are assessed.

(ECF No. 75-9) (emphasis in original).  The matter was scheduled for a telephone hearing at 1:30

p.m on July 13, 2020. (ECF No. 75-5). In another series of communication, Plaintiff sent to

Defendant's attorney, with Defendant cc'd, eighteen (18) emails on July 13, 2020, two of which

he sent after the telephone hearing was set to take place.  (ECF No. 75-22).  After the hearing, the

District Cout of Maryland for Anne Arundel County issued a Temporary Protective Order (the

"Temporary PO") against Plaintiff effective through July 28, 2020.  (ECF No. 75-7).

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers
provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the
Court is referring to the page number of the PDF.

On July 14, 2020, Defendant filed a Complaint concerning  Plaintiff's communications with her.  (ECF Nos. 75-9, 75-10).  As a result, the district court issued a Statement of Charges against Plaintiff in the matter of *State v. Reichert*, Case No. D-07-CR-20-014496 for a single count of violating Maryland Code Ann., Family Law, § 4-509, punishable by 90 days in prison or a fine of  $1,000.00.  (ECF No. 75-8).   Defendant made a second Complaint concerning the communications she received from Plaintiff in an alleged violation of the Temporary PO on July 25, 2020.  (ECF No. 75-1 at 2-3).  As a result of that complaint, the district Court issued a second Statement of Charges against Plaintiff in the matter of *State v. Reichert*, Case No.: D-07-CR-20-014748 for a single count of violating Maryland Code Ann., Family Law, § 4-509, punishable by 90 days in prison or a fine of $1,000.00. (ECF No. 75-11).

Telephone records show nine instances in which Plaintiff contacted Defendant over the phone on July 22, 2020.  (ECF No. 93-1 at 283-86, 1083-84).  On July 28, 2020, the Circuit Court for Anne Arundel County held a hearing and entered a Final Protective Order (the "Final PO") in the matter of *Hornbeck v. Reichert*, Case No. C-02-FM-080330.  (ECF No. 75-12).  The Final PO ordered that Plaintiff "SHALL NOT contact, attempt to contact, or harass (in person, by telephone, in writing, or by any other means) SARAH HORNBECK except to facilitate any child visitation ordered below" which was to exchange the custody of the parties' minor child at "SOUTH BALTIMORE CITY POLICE STATION, 10 CHERRY HILL ROAD, BALTIMORE, MD 21225." *Id.*  During the hearing, evidence offered included a litany of email correspondence from Plaintiff to Defendant and her attorney, voice messages left for Defendant's attorney, voice messages left for Defendant's parents and friends, and text messages from Plaintiff to Defendant.  *See generally* (ECF No. 75-13).  While not directly relevant to the present inquiry, both parties believe this background provides helpful context, and the Court agrees.

After the Final PO took effect, telephone records show Plaintiff contracted Defendant six times on August 3, 2020. (ECF No. 93-1 at 307).  On August 5, 2020, Plaintiff sent Defendant an email "only to arrange custody," which also said,

> 1. As I have said many times [GR] is scared to go to your condo. He does not trust you or your parents. You have kidnapped him (all 3 of you) 3 times in the past and have kept him from me for many more times than that. He knows it all. He has seen you call the cops recently. He knows you had the go to is [sic] friends house in the middle of the night when he was sleeping. He saw the police here 4 times during the lockdown. It all makes sense to him. You need help.
> …
> 5.  Again, YOUR SON does not want to go there again. NOT ME. HE DOESN'T. I am not letting the courts tell him he has to feel unsafe or in danger again. He won't either. Understand that. HE WON'T GO.
>
> 6.  If you really feel that I am making all of this up, just ask him…don't pester him like you did yesterday until he says yes to just get you to stop harassing him. Because HE IS NOT HAPPY WITH YOU. But he is 10. But I think he is fed up enough that he will tell you soon…

(ECF No. 75-22 at 3).  Our Family Wizard marked the email "first viewed" at August 17, 2020, at 11:53 A.M. *Id.*  A litany of other emails show similar communications, and some do not discuss the parties' child at all.  *See id.*

On August 8, 2020, Defendant again brought a criminal complaint against Plaintiff for an alleged violation of the Final PO.  *See* (ECF No. 75-14).  As a result, the district court issued a third Statement of Charges against Plaintiff in the matter of *State v. Reichert*, D-07-CR-20-014317 for a single count of violating Maryland Code Ann., Family Law, § 4-509, punishable by 90 days in prison or a fine of $1,000.00, and Harassment: Course of Conduct in violation of Maryland Code Ann., Criminal, § 3-803 punishable by 90 days in prison and/or a $500.00 fine.  *Id.*

Evidence of the parties' Our Family Wizard family-law website records shows that Plaintiff communicated with Defendant on August 17, 2020 at 12:39 p.m., August 17, 2020 at 12:39 p.m., August 17, 2020 at 12:52 p.m., and August 17, 2020 at 10:47 p.m. *See* (ECF No. 75-22).  On August 18, 2020, Defendant filed a fourth criminal complaint against Plaintiff for an alleged

violation of the Final PO.  (ECF No. 75-15).  As a result, the district court issued a fourth Statement of Charges against Plaintiff in the matter of *State v. Reichert*, Case No.: D-07-CR-20-014331 for a single count of violating Maryland Code Ann., Family Law, § 4-509, punishable by 90 days in prison or a fine of $1,000.00.  *Id.*

Our Family Wizard shows additional instances in which Plaintiff contacted Defendant on August 19, 2020 at 8:01 p.m., August 19, 2020 at 8:03 p.m., August 19, 2020 at 8:13 p.m., August 19, 2020 at 8:13 p.m., August 23, 2020 at 10:23 a.m., August 21, 2020 at 12:52 p.m., August 21, 2020 at 1:39 p.m., August 21, 2020 at 2:46 p.m., August 21, 2020 at 3:10 p.m. and August 21, 2020 at 3:44 p.m. (ECF No. 75-22).  Contrary to the Final PO's exception that contact is allowed "to facilitate child visitation," Plaintiff's communications frequently were sent with the sole or partial purpose of making legal threats, mockery, taunting, and threats to withhold visitation rather than to facilitate it.  *See id.* at 7-15.  On August 21, 2020, Defendant filed a fifth criminal complaint against Defendant for an alleged violation of the Final PO.  (ECF No. 75-17).  As a result, the district court issued a fifth Statement of Charges against Plaintiff in the matter of *State v. Reichert*, Case No.: D-07-CR-20-015008 for a single count of violating Maryland Code Ann., Family Law, § 4-509, punishable by 90 days in prison or a fine of $1,000.00 as well as violation of Maryland Code, Criminal Procedure, 213.1((3)) for Violating a Release Conditions (contact with the victim) punishable by 90 days in prison. *Id.* In his Response to Request for Production No. 3, Plaintiff indicated he "had no direct communication with Defendant after service of the [Final PO], except one single jail phone call made solely to ensure the safety of the minor child…" (ECF No. 75-19 at 4).

On each occasion of an alleged violation of the protective orders, the parties dispute the extent of the contact made and how threatening it was.  (ECF Nos. 75, 91). Plaintiff later appealed

the entry of the Final PO. *See* (ECF No. 75-23).  On March 18, 2022, the Appellate Court of Maryland affirmed the entry of the Final PO "[g]iven the escalating and combative nature of [Plaintiff's] communications." *Id.* at 2.  Offered as helpful background here, the court reasoned,

> Contrary to [Plaintiff's] contention that threatening emails directed at [Defendant's] counsel should not be considered; we view such brazen conduct as further support for the circuit court's decision. [Plaintiff] is an attorney. As such, [Plaintiff] should understand how exceedingly inappropriate it is to attempt to threaten or intimidate an opposing counsel with physical violence. Moreover, [Plaintiff] knew that [Defendant] would see the messages, which included at least one threat of physical violence to [Defendant] – that [their child] was ready to "shoot [Defendant] with a BB gun." Although [Plaintiff] argues that he was only communicating [their child's] statement, that does not make [Defendant's] fear of [Plaintiff] any less reasonable. Someone in [Defendant's] position could have understood that to be a threat from [Plaintiff]. [Plaintiff's] intent in communicating the threat has no bearing on the issue. As the circuit court explained, [Plaintiff's] communications were escalating in nature and we cannot say that [Defendant's] fear was unreasonable given [Plaintiff's] brazen and escalating conduct.

*Id.* at 12.  Two years later, Plaintiff brought the instant malicious prosecution case on June 26, 2024.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III.   ANALYSIS

To prevail on a claim for malicious prosecution in Maryland, a plaintiff must prove "(1) a criminal proceeding instituted or continued by defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56 (2000); *see also DiPino v. Davis,* 354 Md. 18, 59, 729 A.2d 354 (1999); *Montgomery Ward v. Wilson*, 339 Md. 701, 714, 664 A.2d 916, 922 (1995). Presently in dispute are whether (1) Defendant initiated the statements of charges without probable cause and (3) whether she acted with malice, or with a motive other than to bring the offender to justice. (ECF No. 91).

Each time the State brought charges against Plaintiff for the alleged failure to comply with the Interim PO or Final PO, he was charged in violation of Md. Code Ann., Fam. Law § 4-509.

On one occasion, he was also charged with violating Maryland Code Annotated, Criminal Law, §

3-803. Here, the charges and relevant definitions in this case are as follows:

> (a) A person may not fail to comply with the relief granted in an interim protective
> order under § 4-504.1(c)(1), (2), (3), (4)(i), (7), or (8) of this subtitle, a temporary
> protective order under § 4-505(a)(2)(i), (ii), (iii), (iv), (v), or (viii) of this subtitle,
> or a final protective order under § 4-506(d)(1), (2), (3), (4), or (5), or (f) of this
> subtitle.
> (b) A person who violates subsection (a) of this section is guilty of a misdemeanor
> and on conviction is subject, for each offense, to:
> (1) for a first offense, a fine not exceeding $1,000 or imprisonment not exceeding
> 90 days or both; and
> (2) for a second or subsequent offense, a fine not exceeding $2,500 or imprisonment
> not exceeding 1 year or both.

Md. Code Ann., Fam. Law § 4-509. Maryland Code Annotated, Criminal Law, § 3-803(b) defines

harassment as:

> (a) [Omitted Definitions]
> (b) A person may not follow another in or about a public place, conduct visual
> surveillance of an area of another's residence where the other has a reasonable
> expectation of privacy, or maliciously engage in a course of conduct that alarms or
> seriously annoys the other:
> (1) with the intent to harass, alarm, or annoy the other;
> (2) after receiving a reasonable warning or request to stop by or on behalf of the
> other; and
> (3) without a legal purpose.

*Id.*

As an initial matter, Plaintiff argues that the scope of prohibited contact under protective

orders is disputed.  (ECF No. 91 at 6) ("Both orders, however, expressly or implicitly preserved

exceptions consistent with the existing 5/2/2/5 shared-custody schedule for child-related

communications and enforcement of custody orders.").  This is simply not true. Review of the

Interim PO shows no exceptions to a complete prohibition on contact.  (ECF No. 75-3).  The Final

PO provides for one contact exception, such that Plaintiff was permitted to contact Defendant "to

facilitate any child visitation…"  (ECF No. 75-12 at 2).  Moreover, there is no evidence that

Defendant reported any conduct other than the alleged contacts in violation of the protective

8

orders; that is, there is no evidence showing that Defendant chose the specific charges police included in the statements of charges.

> **A.     No Reasonable Juror Could Conclude Defendant Acted Without Probable Cause**

Probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Smithfield Packing Co., v. Evely*, 169 Md.App. 578, 604, 905 A.2d 845 (Md. Ct. Spec. App. 2006) (quoting *Gladding Chevrolet, Inc. v. Fowler*, 264 Md. 499, 505-06, 287 A.2d 280 (1972)) (other citations omitted). "Mere belief, however sincere, is not sufficient. There must be grounds of belief founded upon actual knowledge of facts as would influence the mind of a reasonable person." *Id.* The burden is upon the plaintiff in a malicious prosecution case to show that the defendant lacked probable cause. *Id.* at 605 (citing *Nasim v. Tandy Corp.*, 726 F.Supp. 1021, 1026 (1989)).

The overwhelming, undisputed evidence shows that Plaintiff contacted Defendant multiple times over phone and e-mail in violation of the Interim PO and Final PO.  While Plaintiff argues Defendant had no probable cause, the evidence from Our Family Wizard (ECF No. 75-22) and phone records (ECF No. 93-1) shows multiple contacts that violated both orders.  For example, the first charge was brought on July 14, 2020, after Plaintiff sent Defendant an email in violation of the Interim PO on July 13, 2020.  (ECF Nos. 75-9, 75-10). The second charge brought on July 25, 2020, is supported by nine (9) separate text messages shown in Defendant's phone records. (ECF No. 93-1 at 1083-84).  In the charges brought after the Final PO took effect, review of the email correspondence shows that Plaintiff sent insults, legal threats, and degrading communications in addition to some limited correspondence about child visitation.  (ECF No. 75-23).

Contrary to Plaintiff's argument that he communicated with Defendant under purported exceptions to the protective orders, no reasonable juror could find that the threating and degrading email correspondence sent constitutes a communication solely "to facilitate child visitation" under the Final PO. (ECF No. 75-22 at 3). Thus, Defendant had actual knowledge that Plaintiff violated the terms of the Interim PO and Final PO by way of the written emails and evidence showing phone calls and text messages were sent. *Smithfield Packing Co.*, 169 Md.App. at 604-05. Moreover, Plaintif's position concerning the "exceptions" argument necessarily concedes that he did contact Defendant. (ECF No. 91 at 7) ("Plaintiff's communications were limited in number, strictly child-related, and expressly permitted under the custody exceptions.[2]"). As such, there is no genuine issue of material fact concerning probable cause. The record is replete with undisputed evidence that Plaintiff was required not to contact Defendant, and he did so anyway. He cannot now claim the resulting charges filed against him were fabricated.[3]

B.    **No Reasonable Juror Could Conclude that Defendant Acted with Malice, Or with a Motive Other than to Bring Plaintiff to Justice**

The overwhelming and undisputed evidence shows that Defendant is entitled to judgment as a matter of law on the issue of malice. In other cases considering malicious prosecution actions against civilians, Maryland courts have recognized that "the 'malice' element of malicious prosecution may be inferred from a lack of probable cause." *Okwa v. Harper*, 360 Md. 161, 188,

---

[2] Review of the records shows that Plaintiff's characterization of his communication with Defendant is false. Moreover, any phone contact was prohibited under the Interim PO, even if child related. (ECF No. 75-3). Review of the emails sent after the final PO took effect show that they did not comply with the exception to permit contact to "facilitate" child visitation. (ECF No. 75-22).

[3] Plaintiff's credibility arguments are unavailing. Plaintiff makes much of the fact that Defendant testified she could not remember the specific content or volume of alleged violating communications. (ECF No. 91 at 7). However, the email communications and telephone records she provided in her summary judgment briefs clarify the issue. The question here is not whether Defendant can recall each communication now; it is whether there exists a genuine issue of material fact concerning probable cause, and the records show there is not.

757 A.2d 118 (2000)[4] (quoting *Montgomery Ward v. Wilson,* 339 Md. 701, 717, 664 A.2d 916, 924 (1995)). As such, no reasonable juror could infer Defendant acted with malice based on the evidence considered above.

As such, the Court considers other evidence that might demonstrate a genuine issue of material fact concerning malice, but the Court can find none. To begin, Plaintiff's insistence that Defendant acted with malice is pure speculation.  Indeed, Plaintiff must point to facts showing that this element may be in controversy.  However, considering that Plaintiff did violate the protective orders in each instance giving rise to charges, there is no evidence, direct or circumstantial, that Defendant acted with some motive other than to "bring him to justice," or otherwise enforce the orders.

Additionally, this Court is not the first to contemplate whether Defendant was genuinely terrified of Plaintiff based on his communications with her.  (ECF No. 75-23).  The Court notes that while not dispositive alone here, the state courts that have also reviewed the record involved in the instant protective order litigation have found her fear genuine.  *Cf.* (ECF No. 23 at 6) ("The circuit court explained…'And its to the point now that Ms. Hornbeck is in fear for her safety. So I

---

[4] The distinction between cases brought against civilians and police officers has been the subject of some struggle among courts in Maryland.  As the Court noted in *Warren v. Montgomery County*,

> The Court notes that *Okwa* relies on cases involving malicious prosecution claims against *civilian* defendants, not police officers, in pronouncing that malice may be inferred from an absence of probable cause. *See Okwa,* 757 A.2d at 133. The willingness of the Court of Appeals in *Okwa* to blur the distinction between police officers and other defendants appears to be in tension with its previous suggestion that malice on the part of police officers requires some affirmative showing of ill will or improper motive. *See Brewer,* 298 at 162. In fact, the Maryland Civil Pattern Jury Instructions continue to state that "[m]alice may not be inferred from the absence of probable cause when a law enforcement officer institutes a criminal proceeding." *See* § 17:6, at 508 (4th ed.2002). Doubtless there are legitimate policy reasons for applying a more rigorous standard of proof to malicious prosecution cases against police officers, "'whose occupational routine is that of bringing offenders to justice.'" *Davis,* 441 A.2d at 1093 (quoting *Brewer,* 298 A.2d at162).

Civil No. PJM 09–2510, 2012 WL 3779165, at *3 n.3 (D. Md. Aug. 30, 2012) (emphasis in original).  Considering that the action here involves a malicious prosecution claim against a non-officer, the Court is satisfied that the *Okwa* reading bears relevance here.

do believe that there was a preponderance, she met her burden of proof that you placed her in fear of imminent serious bodily injury.'"); *see also id.* at 14 ("Here, the Protective Order was issued in a manner consistent with the purpose of the statute – to prevent future harm, not to punish any past conduct."). After thorough review, there is no evidence on the record from which a reasonable jury could conclude that Defendant acted with malice, or for any reason other than to stop Plaintiff's contact, when she filed charges in response to his repeated violations of the Interim PO and Final PO.  Plaintiff points to no factual evidence, direct or circumstantial, that could show Defendant acted with malice.  Indeed, Plaintiff relies upon nothing but his own speculation and unrelated allegations concerning Defendant's general character in support of his contentions.  *Deans*, 152 F.3d at 330–31. Therefore, Defendant is entitled to judgment as a matter of law on this element too.

Therefore, Defendant's Motion for Summary Judgment (ECF No. 75) is GRANTED.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment (ECF No. 75) is GRANTED.  The Clerk is kindly asked to close the case.

SO ORDERED.

Dated: <u>April 24, 2026</u>               <u>        /s/        </u>
                                                                J. Mark Coulson
                                                                United States Magistrate Judge